OPINION OF THE COURT
Per Curiam.
Respondent Joel L. Getreu was admitted to the practice of law in the State of New York by the First Judicial Department on April 17, 1989, under the name Joel Lawrence Getreu. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.
The Departmental Disciplinary Committee (DDC) seeks an order pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.4 (e) (1) (i), (ii) and (iii), immediately suspending respondent from the practice of law until further order of this Court based upon his failure to cooperate with the Committee’s investigation of three complaints, and uncontested evidence that respondent repeatedly misappropriated or converted client funds, commingled personal and client funds, and failed to keep required IOLA account records. Respondent opposes the Committee’s motion.
Between July 2011 and March 2013, the Committee received seven complaints against respondent alleging, inter alia, failure to remit client settlements in a timely manner. The Committee issued a subpoena duces tecum for respondent to appear for a deposition with case files relating to three complaints.
While respondent delayed in producing all of the documents requested by DDC, the documents were ultimately furnished so that the part of DDC’s motion that is based on willful failure to cooperate (22 NYCRR 603.4 [e] [1] [i]) is denied.
However, the part of the motion based on respondent’s misappropriation/conversion of client funds, commingling, and failure to keep records based on admissions made during his deposition (22 NYCRR 603.4 [e] [1] [ii]) and bank records (22 NYCRR 603.4 [e] [1] [iii]) warrants discipline. Respondent admitted that he failed to maintain the records required by rule 1.15 (d) (1) of the Rules of Professional Conduct (22 NYCRR 1200.0) detailing the sources of all funds deposited and the purpose and payees of all disbursements.
Records show that in May 2011, respondent deposited a $60,000 settlement check on behalf of his client Jackie B. (B) *150 into his IOLA account. B did not receive her share of the settlement, $39,311.09, until September 2011. The balance in respondent’s IOLA account repeatedly fell below $39,311.09 before B was paid. In August 2011, respondent transferred $90,000 from his business account into his IOLA account which allowed him to pay B. Respondent admitted that his account balance should have remained at least $39,311.09 until B received her funds in September 2011 and that he did not have B’s permission to withdraw any part of her money.
In May 2011, respondent issued a $50,000 IOLA check as a partial settlement to his client Gregory R. (R) and in October 2011, respondent issued two more checks to R totaling $133,333, but respondent’s account records show no underlying deposit on behalf of R. In August 2011, respondent’s IOLA account balance was only $17,911. On October 19, 2011, immediately prior to paying R his $133,333, respondent transferred $80,000 from his business account to his IOLA account. Respondent admitted that he never received R’s permission to draw against his settlement funds.
Respondent also acknowledged that in October and November 2011 he withdrew $10,000 from his escrow account to settle a legal malpractice claim with a client.
In connection with another matter, respondent received $14,500 in settlement funds in July 2012. Respondent held back $8,000 pending resolution of a purported Medicare lien which he later determined did not exist. However, prior to disbursing the balance of funds to that client in May 2013, respondent’s IOLA account balance repeatedly fell below $8,000.
In attempting to explain the frequent transfers between his escrow and business accounts respondent admitted to commingling personal funds with escrow funds. Respondent testified that some of the transfers represented attorney fees although he could not identify the specific matters to which they purportedly pertained. Other transfers purportedly pertained to disputed referral fees which he would transfer back and forth to make use of pending resolution of the dispute. His failure to keep proper records rendered it impossible for respondent to specify which transfers pertained to attorney fees and which pertained to disputed referral fees.
In opposition to the motion for suspension, respondent emphasizes that all of his clients have received the funds to which they were entitled and that none of his improper transfers were intentional. He further explains that his failure to keep ade *151 quate records stems from distraction caused by ongoing family issues which significantly worsened in 2008. Specifically, respondent is the sole caregiver and support for his younger brother who has been suffering with life threatening health problems associated with his contracting Hepatitis C at birth. The situation with his brother was so stressful that it resulted in the dissolution of his marriage and the need to obtain psychiatric treatment. However, respondent did not provide any documentation from his psychiatrist attesting to mental illness. Respondent also notes that it took 19 months to bring this proceeding, which he claims belies the need for immediate suspension.
In reply, the Committee argues, inter alia, it took 19 months to bring the instant motion because respondent delayed the Committee’s investigation by failing to provide requested information, and, because of his personal issues, respondent repeatedly requested extensions which were granted.
22 NYCRR 603.4 (e) (1) (ii) and (iii) provide, in pertinent part:
“[a]n attorney who is the subject of an investigation ... by the Departmental Disciplinary Committee of professional misconduct. . . may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. Such a finding shall be based upon: . . .
“(ii) a substantial admission under oath that the attorney has committed an act or acts of professional misconduct; or
“(iii) other uncontested evidence of professional misconduct.”
The record sufficiently establishes that respondent repeatedly misappropriated and/or converted client funds and used said funds without permission for his own personal purposes, namely, to settle a potential legal malpractice claim in violation of rules 1.15 (a) and 8.4 (c). Respondent also repeatedly commingled personal and client funds in violation of rule 1.15 (a) and failed to keep required IOLA account records in violation of rule 1.15 (d) (1). We have granted interim suspensions for failure to keep personal, business and escrow funds separate in similar situations (see Matter of Riley, 102 AD3d 109 [1st Dept 2012]; Matter *152 of Kennedy, 87 AD3d 107 [1st Dept 2011]; Matter of Dreier, 59 AD3d 37 [1st Dept 2008]; Matter of Berman, 45 AD3d 219 [1st Dept 2007]).
While we sympathize with respondent’s personal situation, we find that interim suspension is warranted under 22 NYCRR 603.4 (e) (1) (ii) and (iii). As to respondent’s request that he be afforded a hearing to defend himself, we note that a hearing on formal charges must be held within 60 days of entry of this Court’s order of suspension (22 NYCRR 603.4 [e] [2]).
Accordingly, the Committee’s motion should be granted and respondent suspended from the practice of law, effective immediately, until such time as disciplinary matters before the Committee have been concluded and until further order of this Court.
Tom, J.E, Andrias, Friedman, Freedman and Clark, JJ., concur.
Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.